Plaintiff sued his employer, the W. Horace Williams Company, and its insurance carrier for compensation in the sum of $17.16 per week for a period not exceeding 400 weeks, plus $250 for medical expenses, claiming that he hurt his back and hips when he fell backwards while carrying a ladder on April 3, 1941. He claims that the injury which he received has rendered him totally and permanently disabled to do *Page 725 
manual labor, the kind of work he was doing when injured.
The defendants deny that he is disabled and deny that he received a disabling injury while working for the Williams Company; they aver that if he did receive an injury to his back, the injury was minor in nature and did not disable him for over a week. The trial judge dismissed plaintiff's suit, and he has appealed.
The case involves two principal questions of fact; viz, first, whether or not plaintiff received an accidental injury as he claims, and second, whether or not he is disabled by reason of the injury which he claims to have received.
In passing on the case, the trial judge made the statement that he was unable to find from the facts that the plaintiff received the injury as alleged and that he hurt his back as he claims. We are urged by plaintiff on this appeal to reach a different conclusion on the facts, as did the trial judge, and reverse his judgment. A careful review and analysis of the evidence not only fails to show any manifest error in the finding of facts by the trial judge, but rather confirms us in the opinion that the findings of the trial judge were correct. The plaintiff has made so many inconsistent statements, and has apparently attempted to cover up so many material and important facts in connection with his claim, that we are not much impressed with his statements relative to the alleged accident and the nature and extent of his disability. From the statements of the trial judge in passing on the case, we infer that he, too, was not impressed with the plaintiff's confusing statements.
In the first place, we find that the plaintiff made several confusing, if not conflicting, statements as to how the accident happened. In his petition, the allegation is made by his attorney, no doubt from information which he received from his client, that while plaintiff was picking up a step ladder, weighing fifty to seventy-five pounds, he stepped on a stick or something that caused his foot to roll out from under him, causing him to fall to the ground on his back, giving his back and spine a wrench and jerk. In a statement which he made to an agent of the insurance company two or three weeks after the alleged accident, he gave about the same account of the accident as he sets forth in his petition. However, later on in making statements to the doctors who examined him, as well as in his testimony on the trial of the case, he says that his foot slipped while he was carrying the ladder and he fell backwards, the ladder falling on him and his back striking against a piece of two by four timber lying on the ground. If, as he later claimed, the ladder fell on him and he fell across a piece of timber, this fact is so important that we hardly see why he omitted giving these facts to his attorney who drew the petition and to the insurance agent who took his statement shortly after the alleged accident.
But the most serious and important acts and statements of the plaintiff which are so derogatory of his claim is that he made four additional claims within the past few years for compensation on account of back injuries, very similar to the alleged present injury, and compromised all four of these claims by receiving a lump sum settlement on the approval of the court. While the fact that he had received compensation for four other similar back injuries would not in itself prevent him from recovering for a fifth back injury of a similar kind from a different employer, yet these facts and circumstances create such a strong suspicion in the mind of the court that his present and fifth claim for the same kind of injury should receive the most careful scrutiny. We list below the four other injuries which the plaintiff claims to have received as shown by certified copies of the compromised settlements made in those cases, as follows:
On September 12, 1934, he signed a joint petition with his then employer, Nelson Brothers, wherein he swore that he stumbled and fell backwards while carrying a sack of cement, causing a dislocation and strain of the articulations between the fourth and fifth lumbar vertebrae and between the fifth lumbar and the sacrum on the right side, and a strain of the lumbosacral on the left side with sciatica. This claim was compromised for $500. On November 25, 1938, he filed a joint petition with his then employer, W.W. Allen, a logging contractor, in which he swore that, while running backwards to escape a falling limb, he fell across a log and strained his left side, hip and back. This claim was compromised for $100. On May 10, 1940, he signed a joint petition with his then employer, Hubier and Thomas, wherein he swore that he suffered an injury to his back by falling in attempting to avoid *Page 726 
being struck by a falling limb. This claim was compromised for $75. On October, 14, 1940, about five months after making the last above mentioned settlement, he filed another joint petition with his then employer, T.O. Trawick, wherein he swore that, while getting out pulp wood in Sabine Parish, he strained his back, hips and certain glands. This claim was compromised by the payment of $125.
We now have before us his fifth claim based on an accident which he states occurred less than six months after the last above described accident wherein he received a cash settlement. These five accidents are so similar as to the manner in which they are alleged to have occurred and the injuries which they claimed to have caused, that we are almost amazed if these were mere coincidences, and we are nonplussed if these accidents and injuries actually occurred in the manner and with the results claimed by the plaintiff. See Rigdon v. Southwestern Transp. Co., La.App., 181 So. 45.
Added to these rather suspicious facts and circumstances is the further fact that the plaintiff stated to the insurance adjuster shortly after the accident that he had never been injured and had never drawn compensation before, and had never had any trouble with his back. He evidently did not tell his lawyer about these previous injuries and settlements, as his attorney, on May 8, 1941, wrote a letter to the Williams Company in which he stated that his client had never had any other injury while working, and that he had passed the physical examination when he applied for work with the Williams Company. Neither did he tell the company doctor about these previous injuries until several weeks after this doctor had begun treating him for a back injury, and after plaintiff had received information to the effect that this doctor and the insurance carrier knew something of these previous injuries. Even then, plaintiff did not give a full account of all these injuries, and at the trial of the case when questioned about them, his testimony appears rather evasive and reluctant.
Notwithstanding these facts and circumstances, we deem it proper to comment on the other testimony in the case. As to the actual happening of the accident itself, a co-employee testified that he saw plaintiff fall from a distance of some forty or fifty yards. This co-employee did not go to the scene of the accident, and, of course, from the distance he was from plaintiff, it was impossible for him to tell whether or not plaintiff actually received an injury in the fall. The only other evidence as to the actual happening of an accident was the testimony of another co-employee who stated that plaintiff came into the building where he was working looking pale and trembling, and that he went to the hospital immediately thereafter.
Several doctors testified in the case, but we deem it unnecessary to burden the record with an analysis of the testimony and opinion of each of these doctors. Plaintiff went to the company hospital where he complained of a back injury, and the company doctor diagnosed his case as a back strain, which diagnosis was made almost entirely on the statement of the plaintiff that he had hurt his back and complained of soreness in the lower part of his back. The doctor gave him infra-red treatment, strapped his back with adhesive tape, and advised plaintiff to stay in bed and rest for several days. The doctor could find no objective symptoms of a back injury, but he had to rely on what plaintiff told him about pain and soreness in his back. This doctor states that after a few weeks he observed that the plaintiff exaggerated his condition, and the doctor began to get suspicious of his complaint. The fact that the company doctor treated plaintiff for several weeks cannot be construed against the employer, as it was not only the practice, but also the duty of the employer to accept plaintiff's statement as to his injury and give him proper treatment until and unless his acts and his condition clearly showed that he was not suffering an injury to the extent he claimed.
Doctors Marcella, Stephens, Strother, Jones and Pierson testified for the plaintiff. The substance of the testimony of the first four of these doctors is that they found a growth or fatty tumor on the left side of plaintiff's back about the size of an egg. Practically all the medical testimony, however, is to the effect that this growth or swelling has no connection with a trauma. This was the only objective symptom these four doctors found other than some rigidity of the muscles in the back, which rigidity of the muscles could be either voluntary or involuntary. The other symptoms were all subjective, being the statements of the plaintiff as to pain in his back on the left side and in his left leg, and an inability on his part to bend his body forward, *Page 727 
backwards and laterally in a normal manner. A reading of the testimony of these doctors indicates to us (in fact some of them so stated) that it was their opinion that the plaintiff was exaggerating his condition. Some of these doctors used expressions indicating a doubt as to the nature of plaintiff's complaint by using such words as "probable" and "possible".
The court on motion of plaintiff appointed two doctors to examine him. These two doctors, Talbot and Phares, made a report of their findings. Dr. Talbot found tenderness on pressure over the lumbar region and left spine. These were also subjective symptoms, and it is clear that his diagnosis of strain of the lumbar muscles on the left side is based largely on what the plaintiff told him. The other doctor, Phares, makes the following significant statement in his report: "Most of this information is based upon his statements. The external findings reveal very little information".
Dr. Pierson gave the strongest and most positive opinion as to plaintiff's condition. He diagnosed his complaint as a rupture of the erector spinae muscles of the back opposite the lumbar spine on the left side, sciatica, with left lumbo-sacral sprain. However, this doctor admits that much of his diagnosis was based on what the plaintiff told him in regard to pain and tenderness in these areas.
In addition to Dr. Dew, the company doctor, Doctors McKinney, Watkins and Hardy testified for the defendants, and these doctors could find nothing wrong with the plaintiff's back. X-rays were made and these showed no fractures or dislocations in the sacro-iliac region.
It will be noted from what has been said above, that the proof of plaintiff's claim, both as to the accident and the extent of his disability, depends to a large extent on the plaintiff's statements to the doctors and his testimony in the case. There are numerous cases where the courts have held that compensation will be granted on the testimony of the plaintiff alone where his testimony is consistent and there is nothing to indicate that his claim is false or exaggerated. We adhere to the principle that great weight must necessarily be given to the statement of the claimant where there is little other available evidence as to the actual happening of the accident, and where the diagnosis and opinion of the doctor as to the nature and extent of the injury must depend largely on subjective symptoms, if there is nothing in the record to doubt the veracity and honesty of the plaintiff. But, on the contrary, where the record is full of inconsistent statements on the part of claimant, and where his actions indicate the prosecution of a fictitious or exaggerated claim, as we are convinced is the case here, the claimant must produce stronger and more convincing testimony to bolster up and support his claim. Of course, if there are objective symptoms of an injury, such as a broken arm, a broken leg, or some other clearly observable injury to the body, the doctors would not be required to depend so largely on the statements of the claimant for their diagnosis of his injury as is the case in back injuries, with no objective symptoms, where pain and injuries in that area can be easily feigned and exaggerated.
For the reasons hereinabove assigned, it is ordered that the judgment appealed from be and the same is hereby affirmed.
Le BLANC and DORE, JJ., concur.