This is a suit under the Workmen's Compensation Act, Act No. 20 of 1914, wherein plaintiff alleges that the defendant is indebted unto him for the maximum compensation and medical and hospital expenses provided by said Act for the reason that on July 22, 1944, while he was employed by defendant and in the course and scope of his employment he suffered an accidental injury which permanently disables him from undertaking or satisfactorily performing any kind of manual labor or any kind of work akin to that which he is trained or fitted to do. The accident alleged is that on July 22, 1944, while employed by defendant on its premises in East Baton Rouge Parish, plaintiff was walking across the floor of said premises and tripped on several lengths of air hose lying upon the floor, falling and striking his back on a hard object. He alleges further that at the time of the accident his weekly wage was such as to entitle him to the maximum compensation of $20 per week.
In its answer the defendant admits the employment of plaintiff and admits the wage scale, and further admits that plaintiff reported to it that he had sustained an accident and injury, as alleged, but denies that plaintiff in fact did have an accident or suffered any compensable injuries in the course of his employment.
After trial of the case the trial judge submitted a well written opinion in which he set forth three questions presented for decision: 1. Did an accident occur? 2. If it did, was plaintiff injured? 3. If plaintiff was injured, did the injury cause plaintiff disability? The trial judge states that plaintiff now suffers from a condition of hypertrophic arthritis, which, according to the medical testimony, is of long duration.
With reference to the decision of the question as to whether the accident occurred, he states that he is fully mindful of the decisions of this Court in the cases of Sumrall v. E. I. Dupont de Nemours Co., 1 So.2d 430, and Rhodus v. American Employers Insurance Co., 9 So.2d 821, wherein it was held that the testimony of the plaintiff alone would be accepted to prove the occurrence of an accident, providing the attendant circumstances afford reasonable corroboration of the plaintiff's testimony, and that he heartily agrees to the proposition that the testimony of the plaintiff alone will suffice to prove an accident, provided plaintiff's testimony is corroborated by circumstances and provided the plaintiff's veracity and credibility can be sufficiently relied upon. Judge Holcombe failed to find the attendant circumstances and the veracity and credibility of the plaintiff sufficient to corroborate his testimony as to the actual happening of the accident, and further stated in his written opinion that "However, even if I believed that the plaintiff had proved the alleged accident I would entertain serious doubts as to whether the slight trauma resulting therefrom activated plaintiff's arthritic condition to the extent of producing the disability which he says he experienced". In accordance with this finding of fact the District Court rendered judgment in favor of defendant dismissing plaintiff's suit. Plaintiff has appealed.
[1] The only questions presented in this appeal are questions of fact, to-wit, whether or not the plaintiff sustained an accident *Page 737 
on July 22, 1944, and, if so, whether or not the said accident resulted in a compensable injury or injuries, as alleged by plaintiff and denied by defendant. These questions of fact were decided adversely to the plaintiff by the trial judge and unless we can find manifest error in his conclusions of fact, based on the record, it is of course incumbent on us to affirm his judgment.
[2] A careful review of the lengthy transcript in this case reveals the following situation:
With reference to the actual accident we find that plaintiff who had worked as a farmer in Livingston Parish until 1919, then came to East Baton Rouge Parish, where he thereafter worked principally as a carpenter and to some extent as a policeman or patrolman; that since 1919 he has been continuously employed until July 22, 1944, except for a period of some eight weeks in the fall of 1939, during which period, as a result of having fallen on a scaffold and having hurt his back while in the employ of the Tilford K. Currie Lumbr Company of Baton Rouge he was disabled, for which he received a compromise settlement of $425, and again in February, 1941, while employed by Horace Williams Company, he was told by the examining physician of that company that he had a left inguinal hernia, and, after having that diagnosis confirmed by examination of Dr. H.W.A. Lee, on a joint petition of the employer and himself, a compromise settlement for the hernia was made in the sum of $1,250, and thereafter it appears that he remained idle for some two or three months, and feeling no ill effects from his hernia condition he thereupon returned to work.
It appears that after recovery from his injury in 1939, he was engaged in work of a carpenter doing piece work until the early part of 1942, when he went to work for the defendant company as a patrolman, and that this piece work, although not the heaviest kind of carpentry work, did involve considerable manual labor. It appears from the testimony that his position as patrolman involved no manual labor, although according to plaintiff's testimony, among his duties he had to walk up and down an 800-foot trestle every half hour. On April 23, 1944, plaintiff's services as a patrolman were honorably terminated, for the reason that the patrol force was reduced, and he was thereupon assigned to a temporary position in the millwater section of the Solvay Process Company replacing Mr. J.J. Harvey during the latter's illness. His duties on this position were to watch water pumps located on docks on the Mississippi River and to mop up the docks when necessary, removing oil and other refuse exuded by the pumps. It appears that when given this position he was told that it was a temporary one and that the man he was replacing would take over upon recovering from his illness.
On the last day of his temporary position, to-wit, on July 22, 1944, just two or three hours before the end of his shift at 11:30 P.M., plaintiff states that while performing his duties, he tripped on an air hose, and slipped on some oil on the docks and fell on his back on the air hose connection or some other hard object on the docks; that he was temporarily knocked out and that as soon as he recovered sufficiently he reported to the first aid station of his company, where he was told that he had a red spot at the place of the alleged injury, and where his back was taped by Patrolman Graves, then in charge of the first aid station. Plaintiff testifies further that he completed his shift and upon returning home he suffered great pain during the night, and the next morning, being unable to contact Dr. McHugh, the company physician, he called Dr. Voss, who was instrumental in having sent to him sedatives to alleviate his pain, and that the next day, July 24, Monday, he saw Dr. Voss who found a bruised spot on his back, just below the belt line, and again taped his back; that thereafter, on Tuesday, July 25th, he called on the nurse of the Solvay Process Company, Mrs. Rolfs, who removed the tape on his back, and thereafter referred him to Dr. McHugh, who in turn, after some questions, sent him back to Dr. Voss for treatment.
Plaintiff's version of the accident is corroborated to the extent that he was alone at the time of the alleged accident, that he did report to the first aid station and was examined and taped by the first aid man, Patrolman Graves; that he did telephone Dr. Voss on Sunday, July 23rd, and received from Dr. Voss a prescription for pain; that he was examined by Dr. Voss on Monday, July 24th, and that Dr. Voss did find a bruised spot on his back at the place of the alleged injury. The testimony of the first aid man, Graves, although he *Page 738 
admits that he taped plaintiff's back, is to the effect that the red spot he found was merely heat, which existed on other parts of plaintiff's back, and the testimony of Mrs. Rolfs is to the effect that she found no indications of any injury or bruise some three days after the alleged accident, and further that from her conversation with Dr. Voss she concluded that plaintiff had no serious injury, if any, and was merely trying to receive a settlement. It was further brought out in the testimony that plaintiff, in his application for employment by the defendant, as well as in his application for insurance, denied ever having received any injury or ever having sustained a hernia, in spite of the fact that he had previously received a compromise settlement for his back injury in 1939, and for a diagnosis of hernia in February, 1941.
As to the effects of the alleged accident, if in fact it occurred, the medical evidence is unanimous to the effect that plaintiff, at the time of the accident or shortly thereafter when X-rays were taken and examined, was suffering from an extreme case of hypertrophic arthritis of long standing, and some of the medical experts testified that probably this condition of hypertrophic arthritis could have been activated or aggravated by the fall allegedly sustained by the plaintiff. However, as brought out by Dr. McHugh, the plaintiff sustained a much more serious accident to his back in October, 1939, in which accident he suffered a dislocated vertebra and at which time he was suffering from marked hypertrophic arthritis, and yet from that serious injury he recovered within a period of 8 weeks, whereas in the accident alleged in this case he at the most suffered merely a bruise on the lower part of his back, with no dislocation or fracture of any kind, and it seems unreasonable to believe that this latter slight trauma could have caused any severe or disabling flare up of his long existing hypertrophic arthritis.
It is significant to note that the trial judge, who had the benefit of seeing plaintiff on the stand, and of seeing the various witnesses, failed to believe plaintiff's story, even as to the actual happening of the accident, and was of the further opinion that even if such an accident occurred, it did not cause plaintiff's disability, which he believes is due to arthritis of long standing.
Our appreciation of the testimony leads us to agree with the conclusions reached by the trial judge. At least we are unable to point out any manifest error in his findings and must therefore affirm the judgment appealed from.
For these reasons, the judgment appealed from stands affirmed.