The issues in this case are stated in the original opinion reported in 23 So.2d 736. Only questions of fact are involved, that is whether or not plaintiff sustained an injury to his back on July 22, 1944, as he claims, and if he did injure his back, was the injury the cause of his present disability? We were unable to point out in our original opinion any manifest error in the findings of fact by the trial judge who rejected plaintiff's claim, and we granted the rehearing in order that we might again review the evidence.
Plaintiff relies principally on three facts and circumstances to support his contention that he fell and hurt his back. The first is the statement of plaintiff himself as to the happening of the accident; the second is that he reported to the first aid man shortly after the accident, and this man found a small red spot on the lower part of his spine; and the third is the fact that Dr. Voss who saw plaintiff two days after the alleged accident testified that he found a bruised spot with discoloration on the part of plaintiff's back where he claimed the pain was located.
Plaintiff did give a fairly plausible and consistent account of how he claims the accident happened. He was alone in the pump house on the barge when he claims his feet became entangled in some air hose lying on the floor and he tripped and fell backwards, striking the lower part of his back against a metal hose connection. The accident happened just before 8 o'clock Saturday night, July 22, 1944, the last night that he was to be on that job, as, the one whom he was relieving was coming back to this job. After he fell, he got up and did not think his back was hurt much, but it began to get sore and give him pain, and in thirty or forty minutes he called his foreman who sent a truck down to the pump house, and he went to the first aid station. He told the man there that he had hurt his back, and this first aid man wrote down a report of the accident and put some adhesive tape on his back. He went back to the job and stayed on until the end of the shift around 11 o'clock that night and then rode home in the usual way. The pain in his back became so severe that he called Dr., Voss the following day, and this doctor had some medicine sent from the drug store to ease his pain. The next day, Monday, he went to see Dr. Voss who examined him and prescribed a belt for him to wear and kept his back strapped and gave him some shots to relieve the pain in his back. He says he has not been able to work since the accident and has been under the treatment of Dr. Voss.
The first aid man admits that plaintiff came to his station and told him that he had tripped on a hose and hurt his back; that he made out a daily report of the complaint, and put some adhesive tape on plaintiff's back. He also admits that it was the rule to make out a report and send it to the foreman when an employee is sent back to the job after reporting an injury. The first aid man was not positive that he made out such a report to send to the foreman, and if he did, the report could not be produced and no very satisfactory reason given for the failure to produce it. This first aid man did make out a report which is dated four days after the alleged accident in which he states that plaintiff reported to him on the night of July 22d; that plaintiff complained of pain in his lower back, and there was a small red spot on the lower part of his back and an elevated area on this portion of the back which appeared to be a mass of fat; that his back is fat all over; that he taped his back and advised him to see the nurse. On the trial of the case this first aid man stated that the red spot on plaintiff's back referred to in the report looked like heat, a ball of fat like he had over the rest of his back.
Dr. Voss saw plaintiff two days after the alleged accident and found an irregular bruised spot with discoloration in the lower lumbar region, and plaintiff complained of pain in that area on being put through motions to bend his back. The doctor had X-ray pictures made which showed marked hypertrophic arthritis in the lower spine, with no fractures or dislocations. The doctor says that the bruised spot was only three or four inches in area with slight swelling; that plaintiff is stout and has fatty tumors — lipomas — over his body. The doctor stated that a bruise of this kind should heal in a week or so. Plaintiff has swelling in his legs caused from bad circulation, but has no connection with the alleged injury. The doctor *Page 103 
says that the hypertrophic arthritis has developed over a long period of time and could account for the pain which plaintiff complains of in his back; that arthritis of this kind will sometimes flare up and cause pain from strain or injury to the back.
It must be conceded that if plaintiff has established with legal certainty the facts above indicated he has overcome the burden resting on him to prove that he suffered an accident. We have no reason to disbelieve what the first aid man put in his report about seeing the red spot on plaintiff's back, and we accept the statement of Dr. Voss as to what he found when he examined plaintiff two days after the alleged accident. However, as to whether or not plaintiff injured his back and suffered the pain which he claims depends primarily on his statements alone, and for that reason his veracity becomes of first importance. We must therefore scrutinize carefully his previous conduct, as well as any motives which might have induced him to exaggerate his complaint or fake an injury. Plaintiff's right to recover compensation does not depend on whether or not he is a good man or a bad man, but where the proof of a fact or set of facts necessary to establish his right to compensation depends principally on his own statements, his truth and veracity become important issues in the case.
[1, 2] Plaintiff injured his back in October, 1939, while working for a lumber company and compromised his claim for $425 and went to work six or eight weeks after receiving the money, although he had been paid for more than twenty weeks disability, and he claims that he was fully able to resume work. In 1941, he compromised a claim against another employer for what was claimed to be a small hernia sustained on the job, and he received in that settlement the sum of $1,250, and resumed work as a carpenter right after the settlement was made and without any operation or treatment to cure the hernia, if he had one. Plaintiff did sustain an injury to his back in 1939, and assuming that he believed he sustained a hernia in 1941, it remains a fact that in the settlement he received for each of these claims he lost very little time in consideration for the money he received in the settlements. Most assuredly, the fact that an employee has received compensation in one or more previous compromise settlements will not bar him from collecting compensation for another injury, but these facts are to be considered in evaluating the employee's testimony when he presents another claim depending for its support primarily on his own statements.
Notwithstanding the fact that plaintiff had secured a compromise settlement for two injuries, in an employment examination made by the defendant company in November, 1943, on being asked the question if he had ever been injured, plaintiff answered in the negative. In an application for health and accident insurance made less than two months before he claims to have been injured, he answered a question to the effect that he had never made a claim for or received indemnity on account of any injury or illness. He took out accident and health insurance in two different companies less than two months before the alleged injury in July. On one of these policies he collected a small amount and has a claim pending on the other.
Plaintiff knew that the night on which he claims to have gotten hurt would be the last night on that job. While he might have expected to receive some help from the labor union representative in getting another job in the plant, he must have known that another job was not a certainty. He relinquished the job as patrolman to accept this temporary job because he did not feel physically able to do the work required as a patrolman, and he had no seniority on any other job.
Had only one or two of the above-mentioned inconsistencies in plaintiff's conduct and statements existed a reasonable explanation and allowance might have been made therefor, but where we find such a combination of inconsistencies and concealments, the probative value of plaintiff's testimony is so weakened that it leaves room for serious doubt as to whether or not he sustained an accident or suffered an injury at the time and in the manner he claims.
While the conduct and statements of the plaintiff in this case are not as inconsistent and suspicious as were those of the plaintiffs in the two cases of Rigdon v. Southwestern Transportation Company, La. App., 181 So. 45 and Dixon v. W. Horace Williams Co. et al., La. App., 8 So.2d 724, there are some similarities in the situations in determining the weight to be given the statements of the plaintiff in the present case.
The doctors had to rely on plaintiff's statements as to the nature and extent of *Page 104 
the pain he claimed to suffer. It is significant that one of the doctors stated that, in his opinion, the plaintiff was exaggerating his symptoms, and a reading of the testimony of Dr. Voss who testified just as favorably for plaintiff as he could and remain within the bounds of truth leaves us with the impression that Dr. Voss entertained some doubt in his own mind as to the genuineness of plaintiff's complaints. The doctor impresses us as wanting to be fair to his patient and at the same time giving the situation as he saw it.
Dr. Kern examined plaintiff at the request of the latter's counsel in February, 1945, and found the same arthritic condition as was found by the other doctors. The account of the accident and the complaint of pain was accepted by this doctor as given by the plaintiff, and the uncertainty which Dr. Kern entertained as to the causal connection which the alleged accident had with plaintiff's present condition is indicated in the following excerpt from the doctor's report: "My impression is that this man has hypertrophic arthritis of the spine and sacroiliac joints. This condition was probably aggravated by the injury. He is totally disabled at present and because of his age and the duration of the symptoms this disability willprobably be permanent." (Emphasis ours.)
Dr. McHugh examined plaintiff for the back injury in 1939 and also examined him twice for the present alleged injury, once in July, 1944, and again in March, 1945. Dr. McHugh's conclusion in his report on the last examination is as follows:
"Mr. Sibley states that he had what he thought was a minor accident on July 22, 1944, at the pump house, Solvay Plant.
"I suggested that he had a more serious accident in 1939, from which he states that he recovered in six or eight weeks.
"X-rays show a marked hypertrophic arthritis of his back which could be symptomatic. As a rule hypertrophic arthritis presents periods of pain with periods of quiescence. I therefore, am unable to state that Mr. Sibley does or does not have back pain.
"However, it is my opinion that if he does have pain it is the result of arthritis.
"If he did have a minor accident July 22, 1944, it could be productive of symptoms but should have subsided after a few weeks."
[3] We have considered the points raised by learned and zealous counsel for plaintiff in the application for a rehearing, as well as those urged in argument and brief on the second hearing, and we are again forced to the conclusion that plaintiff has failed to prove with legal certainty that he sustained an accident as he claims, or if he did sustain such an accident, that it caused his present disability. We are certainly not able to point out any manifest error in the findings of the trial judge.
For the reasons assigned, it is ordered that our original decree be re-instated and made the final judgment of this court.